IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| STATE OF OHIO, ex rel.<br>NANCY HARDIN ROGERS<br>ATTORNEY GENERAL OF OHIO,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF<br>ENERGY, et al.<br><br>    Defendants. | CASE NO. C-1-86-0217<br><br>JUDGE S. ARTHUR SPIEGEL |

## CONSENT DECREE

WHEREAS, on March 11, 1986, the State of Ohio filed a Complaint in the above-captioned case against the United States Department of Energy ("DOE"), NLO, Inc. ("NLO"), and NL Industries, Inc. ("NLI");

WHEREAS, Ohio alleged that DOE, NLO, and NLI have violated various provisions of Federal and Ohio laws and regulations, which DOE, NLO, and NLI have denied;

WHEREAS, on December 2, 1988, the Court entered a Consent Decree (Doc. 95) ("1988 Consent Decree") which resolved Count One and Counts Three through Twenty Seven of the Complaint;

WHEREAS, the 1988 Consent Decree was amended by the January 22, 1993 entry of the Stipulated Amendment to Consent Decree entered December 2, 1988, and Settlement of Charges in Contempt;

WHEREAS, paragraph 8.2 of the 1988 Consent Decree reserves Count Two of the Complaint, concerning Ohio's claim for natural resource damages pursuant to Section 107(a) of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. § 9607(a) ("CERCLA");

WHEREAS, Ohio and DOE agree, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and is entered into without the admission or adjudication of any issues of fact or law, that settlement of this matter will avoid further litigation between the Parties, and that this Consent Decree is fair, reasonable, consistent with CERCLA and in the public interest; and

WHEREAS, Ohio and DOE agree, and the Court by entering this Consent Decree finds, that the restoration actions and other compensatory activities and damages payments set forth in this Consent Decree constitute appropriate actions to restore, replace, or acquire the equivalent of the natural resources allegedly injured by releases or threatened releases of hazardous substances at the Fernald Preserve.

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED and DECREED as follows:

## I. DEFINITIONS

1.1 "DOE" means the United States Department of Energy and any predecessor or successor agency or department of DOE.

1.2 "DOI" means the United States Department of the Interior.

1.3 "Fernald Preserve" means the approximately 1050 acre tract of real property located at 7400 Willey Road, in Hamilton and Butler counties, Ohio, as shown

2

in Appendix A, and formerly known as the Fernald Closure Project, the Fernald Environmental Management Project, and the Feed Materials Production Center.

1.4 "Future Oversight Costs" means internal costs incurred by Ohio EPA after the Effective Date of this Consent Decree in implementing the Natural Resource Restoration Plan provided for in paragraph 3.1, below.

1.5 "Natural Resources" shall have the meaning provided in CERCLA section 101(16), 42 U.S.C. § 9601(16).

1.6 "Natural Resource Damages" means any damages recoverable by Ohio on behalf of the public, for injury to, destruction of, or loss or impairment of Natural Resources as set forth in CERCLA Section 107(a)(4)(C), 42 U.S.C. § 9607(a)(4)(C), at and in the vicinity of the Fernald Preserve as a result of a release of hazardous substances, including but not limited to: (i) Natural Resource Damage Assessment Costs; (ii) the costs of restoration, rehabilitation, or replacement of injured or lost natural resources or of acquisition of equivalent resources; (iii) compensation for injury, destruction, loss, impairment, diminution in value, or loss of use of natural resources; and (iv) each of the categories of recoverable damages described in 43 C.F.R. § 11.15 and applicable state law.

1.7 "Natural Resource Damage Assessment Costs" means the costs Ohio has incurred prior to the Effective Date of this Consent Decree in connection with the assessment of the Natural Resource Damages at and in the vicinity of the Fernald Preserve, including but not limited to: (i) the costs of assessing injury, destruction, or loss or impairment arising from or relating to a release of hazardous substances; (ii) the costs of planning past restoration activities including, but not limited to, internal costs incurred

3

by Ohio EPA prior to the Effective Date of this Consent Decree and costs associated with the development of the Natural Resource Restoration Plan provided for in paragraph 3.1, below; and (iii) the costs of assessing the damages resulting from injury, destruction, or loss or impairment arising from or relating to a release of hazardous substances.

1.8  "Ohio" means the State of Ohio by and through its Attorney General, on behalf of the Ohio Environmental Protection Agency.

1.9  "Ohio EPA" means the Ohio Environmental Protection Agency.

1.10  "Parties" means DOE and Ohio.

1.11  "Trustees" means Ohio EPA, DOE, and DOI.

1.12  "United States" means the United States of America, including all of its departments, agencies, and instrumentalities.

## II. STATEMENT OF PURPOSE

2.1  By entering this Consent Decree, the mutual objectives of the Parties are: (a) to resolve DOE's alleged liability under Count Two of the Complaint by implementing the Natural Resource Restoration Plan, by making a one time cash payment to fund additional natural resource restoration projects and to provide for the reimbursement by DOE of Natural Resource Damage Assessment Costs incurred by Ohio, and by executing and recording Environmental Covenants which apply to the Fernald Preserve; and (b) to avoid further transaction costs and protracted litigation.

2.2  If for any reason the Court should decline to enter this Consent Decree in the form presented, or if entry of this Consent Decree is subsequently vacated, this Consent Decree and the Parties' agreement to it is voidable at the sole discretion of either

Party, and its terms may not be used as evidence in this or any other litigation between the Parties.

### III. NATURAL RESOURCE RESTORATION PLAN

3.1 The Natural Resource Restoration Plan ("Restoration Plan") for the Fernald Preserve is Appendix B, incorporated in and an enforceable part of this Consent Decree. The Restoration Plan outlines the approach for ecological restoration of the Fernald Preserve. Restoration of the Fernald Preserve will transition the majority of the site from post-remediation conditions to the selected final land use, an undeveloped park with an emphasis on wildlife habitat. As set forth in section 2.1 of the Restoration Plan, the ecological goals of the Restoration Plan are to: 1) enhance and restore, as feasible given post-excavation land forms and soils, vegetative communities similar to native communities present in pre-settlement southwestern Ohio; 2) enhance the natural dynamic stream characteristics and aquatic systems of Paddys Run; 3) enhance and restore ecological systems that promote the habitation of wildlife populations native to southwestern Ohio; and 4) integrate mitigation requirements into natural resource restoration planning.

3.2 DOE shall implement all requirements in the Restoration Plan, which includes the identified restoration projects and the monitoring and maintenance requirements of the restoration projects.

### IV. PAYMENTS BY THE UNITED STATES

4.1 As soon as reasonably practicable after the Effective Date of this Consent Decree, the United States on behalf of DOE shall pay Ohio Thirteen Million, Seven Hundred Fifty Thousand Dollars ($13,750,000) to restore, replace, or acquire the

equivalent of injured Natural Resources at and in the vicinity of the Fernald Preserve, in a manner consistent with the Restoration Plan, and to reimburse Ohio's Natural Resource Damage Assessment Costs.

4.2 Ohio and the United States on behalf of DOE agree that in any judicial proceeding to enforce the terms of this Consent Decree and/or to find DOE in contempt for failure to comply or delay in compliance with such terms, the United States on behalf of DOE may raise as a defense that such failure or delay was caused by circumstances beyond its control or that such failure or delay was caused by the unavailability of appropriated funds. While Ohio disagrees that such defenses exist, Ohio and the United States on behalf of DOE agree and stipulate that it is premature at this time to raise and adjudicate the existence of such defenses.

4.3 If payment pursuant to paragraph 4.1 is not made in full within 120 days after the Effective Date of this Consent Decree, then interest on the unpaid balance shall be paid, and shall begin to accrue commencing on the 121st day after the Effective Date and shall continue to accrue through the date of payment. Interest shall accrue at the same rate as is specified for interest on investments of the Hazardous Substances Superfund established under subchapter A of Chapter 98 of Title 26 of the U.S. Code.

4.4 Payment to Ohio pursuant to paragraph 4.1 and 4.3 shall be in the form of an Electronic Funds Transfer into an interest-bearing escrow account in the Registry of the United States District Court for the Southern District of Ohio ("Fernald Natural Resource Damages Court Registry Escrow Account," hereinafter "Escrow Account"). Pursuant to this Consent Decree, and in accordance with 28 U.S.C. § 2041, the Clerk of the Court for the United States District Court for the Southern District of Ohio will accept

payment from the United States on behalf of DOE and shall place said payment in the Registry of the Court in an interest-bearing account. The Clerk of the Court shall disburse money from the Escrow Account (less 10% of interest earned, which is the Registry fee) pursuant to orders of this Court in accordance with paragraphs 4.5 through 4.8 of this Consent Decree. The Parties may request waiver of the Registry fee from the Director of the Administrative Office of the United States Courts pursuant to Section 2.7.2 of the Guide to Judicial Policies and Procedures.

4.5 Applications for orders for disbursements from the Escrow Account to transfer funds or to use funds, as set forth in paragraphs 4.6 through 4.8 of this Consent Decree, shall be made by joint motion of counsel for Ohio and the United States.

4.6 The money in the Escrow Account, including interest earned, may be transferred to an account designated by Ohio and acceptable to the United States. Any transferred funds shall be applied toward the costs of restoration, replacement, or acquisition of the equivalent of injured Natural Resources at and in the vicinity of the Fernald Preserve, as set forth in the Restoration Plan, and to reimburse Ohio for its Natural Resource Damage Assessment Costs pursuant to paragraph 4.8 of this Consent Decree, and shall not be borrowed or used for any other purposes.

4.7 All decisions regarding expenditures from the Escrow Account, and all decisions regarding the implementation of and any amendment to the Restoration Plan, shall be made pursuant to and consistent with the terms of the Trustees' July 2001 Memorandum of Understanding, which is Appendix C to this Consent Decree, and which requires the unanimous agreement of the Trustees. The Trustees shall expend the funds

in the Escrow Account to implement the plan developed pursuant to Section 1.5 of the Restoration Plan.

4.8 A portion of the money in the Escrow Account shall be used to reimburse Ohio for its Natural Resource Damage Assessment Costs. Within 30 days after the Effective Date of this Consent Decree, Ohio shall submit an itemized statement of such costs to DOE and DOI. The Trustees shall jointly determine the amount of Ohio's Natural Resource Damage Assessment Costs and shall make their determination pursuant to and consistent with the terms of their July 2001 Memorandum of Understanding, Appendix C; provided however, that in no event shall the reimbursed amount of Ohio's Natural Resource Damage Assessment Costs be less than $275,000 or more than $500,000.

4.9 Future Oversight Costs shall continue to be paid by DOE pursuant to the federal facilities grant process created in order to implement Section 7 of the 1988 Consent Decree.

4.10 Future Oversight Costs for the development and implementation of the plan to be developed pursuant to section 1.5 of the Restoration Plan shall be capped at $50,000 per year and shall be limited to the four years after the Effective Date of this Consent Decree, unless otherwise agreed by DOE and Ohio EPA.

## V. ENVIRONMENTAL COVENANTS

5.1 Within 60 days after the Effective Date of this Consent Decree, DOE shall submit to Ohio executed Environmental Covenants, in the form attached as Appendix D, to be recorded in the Hamilton and Butler County Recorders' Offices. Within 30 days of

8

receipt of the Environmental Covenants executed by Ohio EPA, DOE shall record in the Hamilton and Butler County Recorders' Offices the executed Environmental Covenants.

## VI. COVENANTS BY OHIO

6.1 Except as provided in paragraphs 7.1, 7.2, and 7.3, Ohio releases, covenants not to sue and not to bring any civil action, or issue administrative findings and orders, against the United States or any department or agency thereof, or any past or present official, employee, agent, or contractor (and any past or present official, officer, director, employee, agent or sub-contractor of such contractor) of the United States, with respect to the claims for Natural Resource Damages contained in Count Two of the Complaint. These covenants shall take effect upon receipt of the payment pursuant to paragraph 4.1 or 4.3 of this Consent Decree, and are conditioned upon the satisfactory performance by DOE of its obligations under this Consent Decree.

6.2 The covenants in paragraph 6.1 extend only to the United States and any past or present official, employee, agent, or contractor (and any past or present official, officer, director, employee, agent or sub-contractor of such contractor) of the United States and do not extend to any other person.

## VII. RESERVATIONS OF RIGHTS

7.1 General Reservation of Rights. This Consent Decree is without prejudice to any rights Ohio may have against the United States with respect to all other matters not expressly included within paragraph 6.1 of this Consent Decree or paragraph 8.1 of the 1988 Consent Decree.

7.2 Specific Reservations of Rights. Notwithstanding any other provision of this Consent Decree, Ohio reserves all rights against DOE with respect to:

9

a) claims based upon a failure by DOE to meet a requirement of this Consent Decree;

b) liability for any damages or any other costs incurred or to be incurred by Ohio that are not within the definition of Natural Resource Damages and have not been resolved by the 1988 Consent Decree;

c) liability for failure to comply with any CERCLA Record of Decision pertaining to the Fernald Preserve as of the date of lodging this Consent Decree;

d) liability arising from injury to Natural Resources after the date of lodging of this Consent Decree resulting from any disposal of hazardous substances at the Fernald Preserve; and

(e) criminal liability, if any, including criminal liability for past actions by Defendants.

7.3 Notwithstanding any other provision of this Consent Decree, Ohio also reserves the right to institute proceedings against DOE in this action or in a new action seeking recovery of Natural Resource Damages, based on: (i) conditions with respect to the Fernald Preserve, unknown to Ohio as of the date of lodging of this Consent Decree, that result in releases of hazardous substances that cause or contribute to injury to, destruction of, or loss of Natural Resources ("Unknown Conditions"); or (ii) information received by Ohio after the date of lodging of this Consent Decree which indicates that there is injury to, destruction of, or loss of Natural Resources of a type that was unknown to Ohio as of the date of lodging of this Consent Decree ("New Information"). For the purpose of this paragraph, the information and conditions known to Ohio shall include any information or conditions listed or identified in records or documents relating to the

Fernald Preserve that were in the possession or under the control of Ohio as of the date of lodging this Consent Decree, or that are in the administrative records of the response actions taken pursuant to the 1988 Consent Decree.

7.4  DOE reserves any and all defenses it may have to the claims reserved in paragraphs 7.1, 7.2, and 7.3, except that in any subsequent administrative or judicial proceeding initiated by Ohio for injunctive relief, or Natural Resource Damages or other relief related to the Fernald Preserve, DOE shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, *res judicata*, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by Ohio in the subsequent proceeding were or should have been brought in the instant case; provided however, that nothing in this paragraph affects the enforceability of the covenants by Ohio set forth in Section VI. Nothing in paragraphs 7.1, 7.2, or 7.3 shall limit or otherwise affect the provisions of paragraph 8.1 of the 1988 Consent Decree.

## VIII. COVENANTS BY DOE

8.1  DOE hereby agrees not to assert against Ohio any direct or indirect claim for reimbursement of any payment for Natural Resource Damages based on Sections 107 or 113 of CERCLA, 42 U.S.C. §§ 9607 or 9613, and covenants not to sue Ohio under Section 107 or 113 of CERCLA, 42 U.S.C. §§ 9607 or 9613, with respect to Natural Resource Damages, including payments made under Section IV of this Consent Decree. These covenants shall not apply in the event Ohio brings a claim and/or administrative action against DOE pursuant to the reservations set forth in paragraphs 7.1, 7.2, and 7.3,

above, but only to the same extent and for the same matters, transactions, or occurrences as are raised in the claims or actions brought by Ohio pursuant to such reservations.

## IX. EFFECT OF SETTLEMENT/CONTRIBUTION PROTECTION

9.1     Nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree, and each Party expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which that Party may have with respect to any matter, transaction, or occurrence relating in any way to the Fernald Preserve against any person not a Party to this Consent Decree.

9.2     The Parties agree, and by entering this Consent Decree this Court finds, that DOE is entitled, as of the Effective Date of this Consent Decree, to protection from actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2), or other applicable law, for "matters addressed" in this Consent Decree. The "matters addressed" in this Consent Decree are Natural Resource Damages.

9.3     The Parties agree, and by entering this Consent Decree this Court finds, that DOE resolves its liability for Natural Resource Damages at the Fernald Preserve within the meaning of CERCLA section 113(f)(3), 42 U.S.C. § 9613(f)(3).

## X. NOTICES AND SUBMISSIONS

10.1    Whenever, under the terms of this Consent Decree, notice is required to be given or a document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. Written notice as

specified herein shall constitute complete satisfaction of any written notice requirement of this Consent Decree with respect to Ohio and DOE, respectively.

As to DOE:

a.  Chief, Environmental Defense Section
    Re: DJ # 90-7-5-13
    Environment and Natural Resources Division
    U.S. Department of Justice
    P.O. Box 23986
    Washington, D.C. 20026-3986

    Or, if sent by courier or overnight delivery service:

    Chief, Environmental Defense Section
    Re: DJ # 90-7-5-13
    Environment and Natural Resources Division
    U.S. Department of Justice
    Suite 8000
    601 D Street, N.W.
    Washington, D.C. 20004

b.  Office of Legal Services
    Environmental Management Consolidated Business Center
    U. S. Department of Energy
    250 E. 5th Street, Suite 500
    Cincinnati, OH 45202

c.  Office of General Counsel
    U.S. Department of Energy
    Room 6A-245
    1000 Independence Avenue, SW
    Washington, D.C. 20585

As to Ohio:

a.  Chief, Environmental Enforcement Section
    Ohio Attorney General's Office
    30 E. Broad Street, 25th Floor
    Columbus, Ohio 43215

b. Thomas A. Schneider (or his successor)
Federal Facilities Program
Ohio EPA, Southwest District Office
401 East Fifth Street
Dayton, Ohio 54502-2911

As to DOI:

a. Mary Knapp
U.S. Fish and Wildlife Service
Reynoldsburg Ecological Services Field Office
690 Americana Parkway, Suite H
Reynoldsburg, Ohio 43068

## XI. EFFECTIVE DATE AND RETENTION OF JURISDICTION

11.1 This Consent Decree shall take effect upon entry by the Court ("Effective Date"). The Parties recognize that certain obligations under this Consent Decree may be performed before this Consent Decree is entered by the Court.

11.2 The Court shall retain jurisdiction to modify and enforce the terms and conditions of this Consent Decree and to resolve disputes arising hereunder as may be necessary or appropriate for the construction or execution of this Consent Decree.

## XII. MODIFICATIONS

12.1 Any material modification of this Consent Decree shall be made by agreement of the Parties and in writing, and shall not take effect unless approved by the Court. Any non-material modification of this Consent Decree shall be made by agreement of the Parties and in writing, and shall not take effect until filed with the Court. Any modification of the Restoration Plan (Appendix B to this 1 Consent Decree), the July 2001 Memorandum of Understanding (Appendix C to this Consent Decree), or the Environmental Covenants (Appendix D to this Consent Decree) shall be made by agreement of the Parties and in writing, and shall not take effect until filed with the

14

Court. Nothing in this Consent Decree shall be deemed to alter the Court's power to enforce, supervise, or approve modifications of this Consent Decree or the 1988 Consent Decree, as previously amended.

12.2 The provisions of this Consent Decree are not severable. The Parties' consent hereto is conditioned upon the entry of this Consent Decree in its entirety without modification, addition, or deletion, except as agreed to by the Parties.

12.3 Unanticipated or increased costs or expenses associated with the implementation, oversight, or monitoring of actions called for by this 1 Consent Decree shall not serve as a basis for modifications of this Consent Decree.

## XIII. SIGNATORIES

13.1 The undersigned representatives of Ohio and DOE each certify that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind such Party to this document. This Consent Decree may be executed in multiple counterparts, each of which shall be deemed an original, but all of which, taken together, shall constitute one and the same instrument.

## XIV. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

14.1 This Consent Decree shall be lodged with the Court for a period of not less than 30 days for public notice and comment. The Parties reserve the right to withdraw or withhold their consent if comments regarding the Consent Decree disclose facts or considerations which indicate that this Consent Decree is inappropriate, improper, or inadequate.

14.2 As soon as reasonably practicable after expiration of the public comment period in paragraph 14.1, the Parties shall jointly inform the Court of the substance of any

comments received regarding the Consent Decree, and of the Parties' responses to such comments, and shall move the Court to enter the Consent Decree if the Parties do not withdraw or withhold their consent pursuant to paragraph 14.1.

## XV. FINAL JUDGMENT

15.1 This Consent Decree and its appendices constitute the final, complete, and exclusive understanding among the Parties with respect to the settlement embodied herein. The Parties acknowledge that there are no representations, agreements, or understandings relating to the settlement of Count Two other than those expressly contained in this Consent Decree.

15.2 The terms of the 1988 Consent Decree, as previously amended, shall be unaltered and shall remain in full force and effect.

15.3 Upon approval and entry of this Consent Decree by the Court, this Consent Decree together with the 1988 Consent Decree, as previously amended, shall constitute a final judgment between and among Ohio and DOE in this case. The Court finds that there is no reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54(b) and 58.

15.4 Except as set forth in Section IV, each Party shall bear its own costs and attorneys' fees.

Respectfully submitted,

NANCY HARDIN ROGERS
Attorney General of Ohio

By: *Timothy Kern*
TIMOTHY J. KERN
Assistant Attorney General
Environmental Enforcement Section
Public Protection Division
30 East Broad Street-25th Floor
Columbus, Ohio 43215-3400
(614) 466-5261
TKern@ag.state.oh.us

Counsel for State of Ohio

OCTOBER 27, 2008

GREGORY G. LOCKHART
United States Attorney

DONETTA D. WIETHE (0028212)
Assistant United States Attorney
221 East Fourth Street, Suite 400
Cincinnati, Ohio 45202
(513) 684-3711
Donetta.Wiethe@usdoj.gov

RONALD J. TENPAS
Assistant Attorney General

By: *[signature]*
DANIEL R. DERTKE
U.S. Department of Justice
Environment & Natural Resources Division
Environmental Defense Section
P.O. Box 23986
Washington, DC 20026-3986
(202) 514-0994
daniel.dertke@usdoj.gov

Counsel for Dept. of Energy

October 24, 2008

SO ORDERED this 11 day of Nov, 2008

*[signature]*
S. ARTHUR SPIEGEL
United States District Judge

17